1  RONALD M. GREENBERG, ESQ. (State Bar No. 035953)
   rgreenberg@bcrslaw.com
2  RONALD M. GREENBERG,
     A PROFESSIONAL CORPORATION
3
   PETER J. MARCUS, ESQ. (State Bar No. 202602)
4  pmarcus@bcrslaw.com
   BERKES CRANE ROBINSON & SEAL LLP
5  515 South Figueroa Street, Suite 1500
   Los Angeles, California 90071
6  Telephone: (213) 955-1150
   Facsimile:  (213) 955-1155
7
   JANET A. SHAPIRO, ESQ. (State Bar No. 126974)
8  shapirofirm@aol.com
   THE SHAPIRO LAW FIRM
9  212 S. Gale Drive
   Beverly Hills, California 90211
10 Telephone: (323) 852-0333
   Facsimile:  (323) 852-0336
11
   Attorneys for APPELLANTS
12 MICHAEL ACKERMAN AND FLOYD KURILOFF

13              **UNITED STATES DISTRICT COURT**

14    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

15

16 | IN RE:                              | Case No. CV10-4974 GW
17 | JOSE EBER                           | *Hon. George H. Wu*
18 |              DEBTOR                  |
19 |                                     | Bankruptcy Court Case No.
20 | MICHAEL ACKERMAN AND FLOYD KURILOFF |     2:09-bk-25103 BR
21 |              APPELLANTS             | Adversary Case No.
22 |        v.                           |     2:09-ap-02090 BR
23 | JOSE EBER                           |
24 |              APPELLEE               | **APPELLANTS' OPENING BRIEF**
25 |                                     | Date:  September 13, 2010
26 |                                     | Time:  8:30 a.m.
   |                                     | Crtrm: 10
27

28

LAW OFFICES
BERKES CRANE
ROBINSON & SEAL LLP

# TABLE OF CONTENTS

**Page**

I. BASIS OF JURISDICTION.................................................................................2

II. STATEMENT OF ISSUE AND STANDARD OF REVIEW .........................2

III. STATEMENT OF CASE ................................................................................2

IV. STATEMENT OF FACTS .............................................................................4

V. ARGUMENT ...................................................................................................6

    A.    There Is A Strong Federal Policy Favoring Arbitration On Both
           Non-Core And Core Proceedings Unless The Bankruptcy Court
           Finds That Arbitration "Inherently Conflicts" With The
           Bankruptcy Code Or That Arbitration Would "Necessarily
           Jeopardize" The Objectives Of The Bankruptcy Code ..........................6

    B.    The Bankruptcy Court Has Not Made A Sufficient Finding That
           Enforcing The Parties Arbitration Agreement Would "Inherently
           Conflict" With Or "Necessarily Jeopardize" The Underlying
           Purposes Of The Bankruptcy Code........................................................8

    C.    Concern About Possible Collateral Estoppel Or Issue Preclusion
           In The Context Of This Case Is Not A Relevant Basis To Deny
           The Motion To Compel Arbitration.......................................................10

    D.    Resolution Of Appellants' Non-Core Claims Will Be Far More
           Expeditious And Less Costly In Arbitration As Opposed To The
           Bankruptcy Court ..................................................................................18

CONCLUSION......................................................................................................21

LAW OFFICES
BERKES CRANE
ROBINSON & SEAL LLP

# TABLE OF AUTHORITIES

**Page**

## CASES

*Britton v. Co-Op Banking Group,*
   916 F.2d 1405 (9th Cir. 1990) .................................................................. 2

*Grogan v. Garner,*
   498 U.S. 279 (1991) ................................................................. 14, 16, 18

*In re Barigian,*
   72 B.R. 407 (Bankr.C.D.Cal. 1987) ............................... 13, 16, 17, 18

*In re Clayton,*
   168, B.R. 700 (Bankr.N.D.Cal. 1994) ................................... 13, 16

*In re Electric Machinery Enterprises, Inc.,*
   479 F.3d 791 (11th Cir. 2007) .................................................... 6, 8, 10

*In re Gurga,*
   176 B.R. 196 (9th Cir. BAP 1994) ........................................... 6

*In re Mintz,*
   434 F.3d 222 (3rd Cir. 2006) ..................................................... 6

*In re Rhodes,*
   2008 WL 4876765, *2 (Bank.W.D.M. 2008) .................................. 17

*In re Zangara,*
   217 B.R. 26 (Bankr.E.D.N.Y. 1998) .................................. 15

*Khaligh v. Hadaegh (In re Khaligh),*
   338 B.R. 817 (9th Cir. BAP 2006) .................................. 17

*MBNA America Bank, N.A. v. Hill,*
   436 F.3d 104 (2d Cir. 2006) ...................................... 6, 7, 8

*Schweitzer v. Harvey,*
   2008 WL 553174 (E.D. La. 2008) .................................. 3

*Scruggs v. Lowman (In re Scruggs),*
   392 F.3d 124 (5th Cir. 2004) ......................................... 3

*Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane),*
   179 B.R. 628 (Bankr. D.Minn. 1995) ................................ 19

*Vans Inc. v. Rosendahl (In re Rosendahl),*
   307 B.R. 199 (D. Ore. 2004) ......................................... 17, 18

1

## STATUTES

2  9 U.S.C.§ 16(a)(1)(B) ..................................................................................2

3  9 U.S.C.§§ 1-16 ......................................................................................20

4  11 U.S.C. § 362(a) .....................................................................................3

5  11 U.S.C. § 362(c)(2)(C) ............................................................................3

6  11 U.S.C. § 523(a)(2)(4)(6) ........................................................................3

7  11 U.S.C. § 727............................................................................................3

8  28 U.S.C. § 157(c)(1)................................................................................20

9  28 U.S.C. § 158(a)(1)..................................................................................2

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
BERKES CRANE
ROBINSON & SEAL LLP

APPELLANTS' OPENING BRIEF

# I.

## BASIS OF JURISDICTION

A denial of a motion to compel arbitration is immediately appealable pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 16(a)(1)(B). Such appeal may be taken from an order of a bankruptcy court judge to a district court. 28 U.S.C. § 158(a)(1).

# II.

## STATEMENT OF ISSUE AND STANDARD OF REVIEW

Whether the bankruptcy court erred in denying Appellants' Motion to Compel Arbitration and to Stay Adversary Proceeding ("Motion to Compel Arbitration"). This issue is subject to *de novo* review. *Britton v. Co-Op Banking Group*, 916 F.2d 1405, 1409 (9th Cir. 1990) ("The denial of a motion to compel arbitration also is reviewed *de novo*.").

# III.

## STATEMENT OF CASE

Appellants' Motion to Compel Arbitration was filed in an adversary proceeding in the chapter 7 bankruptcy case ("Bankruptcy Case") of debtor Jose Eber ("Debtor" or "Appellee"). In the adversary proceeding, Appellants filed a complaint to determine whether a debt owed by Appellee to Appellants Michael Ackerman ("Ackerman") and Floyd Kuriloff ("Kuriloff") (collectively "Appellants") of approximately $3.4 million is dischargeable. Prior to Appellee filing his Bankruptcy Case, Appellants commenced an arbitration with the American Arbitration Association in New York pursuant to a written agreement between the Appellants and Appellee. The essence of Appellants' claim is that they were induced by Appellee to invest in a hair salon business in Las Vegas through Appellee's fraud and breach of fiduciary duty owed to Appellants by virtue of Appellants and Appellee being each one-third managing members of a joint venture referred to as JEFAM and as to Appellant Ackerman because of another joint

1 venture he was in with Appellee. ("Claim").

2    Subsequent to Appellants commencing arbitration, Appellee filed his
3 Bankruptcy Case, which resulted in an automatic stay of the arbitration proceeding
4 pursuant to 11 U.S.C. § 362(a) of the Bankruptcy Code.[1]  Appellants thereafter
5 timely filed their complaint to determine whether their Claim is non-dischargeable
6 pursuant to §§ 523(a)(2) (4) and (6).

7    While the automatic stay was in effect, Appellants filed a Motion for Relief
8 from the Automatic Stay Under 11 U.S.C. § 362 ("Motion for Relief from Stay") so
9 that they could proceed with the pending arbitration to determine liability and
10 damages.  Prior to the Motion for Relief from Stay being heard, Appellee received
11 an order discharging his debts under § 727 ("Discharge Order"), thus terminating the
12 automatic stay pursuant to § 362(c)(2)(C).  At the time of the hearing on the Motion
13 for Relief from Stay, Appellee's Discharge Order was never mentioned.  The
14 bankruptcy court denied the Motion for Relief from Stay, and entered an Order to
15 that effect.

16    Thereafter, Appellants concluded that because the Discharge Order occurred
17 prior to the hearing on the Motion for Relief from Stay, the bankruptcy court had no
18 jurisdiction to rule on the Motion for Relief from Stay.  The bankruptcy court should
19 have taken the Motion for Relief from Stay off calendar as moot.[2]

20    In light of this belief, Appellants filed in the Bankruptcy Case a Motion to

21 _____
[1] Unless otherwise stated, references to "section" are to the Bankruptcy Code, 11
22 U.S.C. §§ 101, *et seq.*

23 [2] Exemplifying the lack of jurisdiction to rule on a motion to lift the automatic stay
24 if it is terminated by operation of law prior to ruling on the motion is *Schweitzer v.
Harvey,* 2008 WL 553174 (E.D. La. 2008) (motion to lift stay became moot as a
25 result of plan confirmation prior to hearing).  Moreover, when a ruling on a motion
26 to lift stay is made after the issue giving rise to the motion becomes moot, the
appellate court will vacate the ruling.  *Scruggs v. Lowman (In re Scruggs),* 392 F.3d
27 124 (5th Cir. 2004).

28

1 Vacate Order ("Motion to Vacate") and in the adversary proceeding their Motion to
2 Compel Arbitration. At the hearing on May 25, 2010, the bankruptcy court denied
3 both motions and subsequently entered Orders to that effect. Appellants have timely
4 appealed all of these Orders.

5      The distinct issue with respect to the appeal of the Orders denying the Motion
6 for Relief from Stay and the Motion to Vacate is whether the bankruptcy court had
7 jurisdiction to deny the Motion for Relief from Stay because of the Discharge Order
8 and whether the bankruptcy court erred in not granting the Motion to Vacate. These
9 issues are not a part of the instant appeal.[3]

10      Appellants reference to the Motion to Compel being "a cleaner motion," as
11 noted by the District Court in Footnote 1 of its Civil Minutes – General filed on
12 August 5, 2010, simply meant that the Motion to Compel did not have a jurisdiction
13 issue. Moreover, the Motion for Relief from Stay sought relief from the automatic
14 stay to proceed with pre-bankruptcy arbitration pending in a non-bankruptcy forum,
15 whereas the Motion to Compel Arbitration sought to compel the Debtor to honor his
16 pre-bankruptcy contractual agreement as a member of JEFAM to arbitrate disputes,
17 and was brought in furtherance of the non-dischageability complaint.[4]

18                                        **IV.**

19                           **STATEMENT OF FACTS**

20      1.    On May 21, 2009, Appellants commenced an arbitration against
21            Appellee in New York pursuant to a written agreement. Appellants'

22 ───────────────
[3]  The Notice of Appeal from the Orders denying the Motion for Relief from Stay
23 and the Motion to Vacate has been filed, the Appellants have filed their Statement of
   Issues, Designation of Record, Notice of Transcript(s), and Notice of Related Cases.
24 However, that appeal has not yet been docketed and, therefore, has not been
25 assigned a case number by the Clerk of the District Court.

26 [4]  For example, if the Motion for Relief from Stay had been granted, a Motion to
   Compel Arbitration may still have been necessary if Appellee refused to participate
27 in the arbitration.

28

1         Appendix, No. 1. Dkt. No. 27, Exh. A.

2    2.    On June 16, 2009, Appellee filed his Chapter 7 Voluntary Petition. *Id.,*

3         No. 2, Dkt. No. 1.

4    3.    On September 8, 2009, Appellants filed their Complaint Re

5         Dischargeability. *Id.,* No. 3, Dkt. No. 1.

6    4.    On December 23, 2009, Appellants filed their Motion for Relief from

7         Stay. *Id.,* No. 4, Dkt. No. 52.

8    5.    On March 4, 2010, Appellee was discharged. *Id.,* No. 5, Dkt. No. 61.

9    6.    On March 22, 2010, a hearing was held in which the bankruptcy court

10        denied Appellants' Motion for Relief from Stay and issued an Order

11        thereon. *Id.,* No. 6, Dkt. No. 67.

12    7.    On April 1, 2010, Appellants filed their Motion to Vacate. *Id.,* No. 7,

13        Dkt. No. 71.

14    8.    On April 1, 2010, Appellants filed their Motion to Compel. *Id.,* No. 8,

15        Dkt. No. 15.

16    9.    On May 25, 2010, a hearing was held in which the bankruptcy court

17        denied Appellants' Motion to Vacate and Motion to Compel (RT

18        Docket No. 31). *Id.* No. 9, Reporter's Transcript, Dkt. No. 31.

19    10.   On June 10, 2010, the bankruptcy court signed and filed its Order

20        Denying Motion to Compel. *Id.,* No. 10, Dkt. No. 32.

21    11.   On June 23, 2010, Appellants filed their Notice of Appeal re the denial

22        of their Motion to Compel. *Id.,* No. 11, Dkt. No. 34.

23    12.   On June 30, 2009, the bankruptcy court filed its Order Denying Motion

24        to Vacate. *Id.,* No. 12, Dkt. No. 78.

25    13.   On July 13, 2010, Appellants filed their Notice of Appeal re the denials

26        of their Motion for Relief from Stay and Motion to Vacate. *Id.,* No. 13,

27        Dkt. No. 80.

28

1

**V.**

2

**ARGUMENT**

3   **A.**   **THERE IS A STRONG FEDERAL POLICY FAVORING ARBITRATION ON**

4   **BOTH NON-CORE AND CORE PROCEEDINGS UNLESS THE**

5   **BANKRUPTCY COURT FINDS THAT ARBITRATION "INHERENTLY**

6   **CONFLICTS" WITH THE BANKRUPTCY CODE OR THAT ARBITRATION**

7   **WOULD "NECESSARILY JEOPARDIZE" THE OBJECTIVES OF THE**

8   **BANKRUPTCY CODE**

9        It is now well established in the Ninth Circuit and elsewhere that there is a

10   strong federal policy favoring arbitration. *In re Gurga,* 176 B.R. 196, 199-200 (9th

11   Cir. BAP 1994) (nothing in the Bankruptcy Code excludes parties from pre-petition

12   contractual agreement to arbitrate non-core claims; bankruptcy court abuses

13   discretion to decide otherwise); *In re Electric Machinery Enterprises, Inc.,* 479 F.3d

14   791, 795-796 (11th Cir. 2007) (bankruptcy courts lack discretion to deny arbitration

15   of non-core matters; if core, must determine if arbitration conflicts with underlying

16   purposes of Bankruptcy Code); *In re Mintz,* 434 F.3d 222, 229 (3rd Cir. 2006) ("The

17   FAA has established a strong policy in favor of arbitration"); *MBNA America Bank,*

18   *N.A. v. Hill,* 436 F.3d 104, 108-09 (2d Cir. 2006) (stay violation issue under

19   § 362(h) is core, but arbitration allowed in part because discharge order had been

20   entered and trustee had determined that it was a no asset estate, which allowed court

21   to hold that the Appellee "no longer requires protection of the automatic stay and

22   resolution of the claim would have no effect on her bankruptcy estate").[5]

23        The issue in this case is whether Appellants have the right to have an

24   arbitrator first determine whether Appellee is liable to Appellants and, if so, on what

25   grounds and for how much before Appellants pursue their core complaint in the

26

27   [5] As in *In re Hill,* the Discharge Order has been entered in the bankruptcy case.

28

1   bankruptcy court to determine dischargeability.  Applicable law holds that

2   Appellants have such right unless Appellee can show and the bankruptcy court finds

3   that enforcing the parties' arbitration agreement would "inherently conflict" with the

4   Bankruptcy Code, or would "necessarily jeopardize" the objectives of the

5   Bankruptcy Code.  As stated in *MBNA America Bank v. Hill, supra,* 423 F.3d at

6   108:

7           Bankruptcy courts are more likely to have discretion to

8           refuse to compel arbitration of core bankruptcy matters,

9           which implicate "more pressing bankruptcy concerns."  *In*

10          *re U.S. Lines, Inc.,* 197 F.2d at 640.  However, even as to

11          core proceedings, the bankruptcy court will not have

12          discretion to override an arbitration agreement unless it

13          finds that the proceedings are based on provisions of the

14          Bankruptcy Code that "inherently conflict" with the

15          Arbitration Act or that arbitration of the claim would

16          "necessarily jeopardize" the objectives of the Bankruptcy

17          Code.  *Id.*  This determination requires a particularized

18          inquiry into the nature of the claim and the facts of the

19          specific bankruptcy.  The objectives of the Bankruptcy Code

20          relevant to this inquiry include "the goal of centralized

21          resolution of purely bankruptcy issues, the need to protect

22          creditors and reorganizing debtors from piecemeal litigation,

23          and the undisputed power of a bankruptcy court to enforce

24          its own orders."  *Ins. Co. of N. Am. v. NGC Settlement Trust*

25          *& Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.),*

26          118 F.3d 1056, 1069 (5th Cir. 1997).  If a severe conflict is

27          found, then the court can properly conclude that, with

28          respect to the particular Code provision involved, Congress

1               intended to override the Arbitration Act's general policy

2               favoring the enforcement of arbitration agreements.

3        Appellants submit that the dischargeability provisions of the Bankruptcy

4 Code do not "inherently conflict" with the FAA, nor will arbitration of the non-core

5 claims "necessarily jeopardize" the objectives of the Bankruptcy Code. Allowing

6 arbitration will not interfere with or impact "the goal of centralized resolution of

7 purely bankruptcy issues, the need to protect creditors and reorganizing appellees

8 from piecemeal litigation, and the undisputed power of a bankruptcy court to

9 enforce its own orders." *MBNA America Bank v. Hill, supra,*

10        In this matter, even though the claims raised in the arbitration are non-core,

11 and even though the arbitrator has not been asked to rule on dischargeability,

12 Appellee insists that Appellants' liability and damage claims are core. However,

13 even if Appellants' claims are deemed to be core, because they are related to the

14 dischargeability claim, that does not mean that Appellants still do not have a right to

15 arbitration.

16      **B.**     **THE BANKRUPTCY COURT HAS NOT MADE A SUFFICIENT FINDING**

17            **THAT ENFORCING THE PARTIES ARBITRATION AGREEMENT WOULD**

18            **"INHERENTLY CONFLICT" WITH OR "NECESSARILY JEOPARDIZE"**

19            **THE UNDERLYING PURPOSES OF THE BANKRUPTCY CODE**

20        For the bankruptcy court to exercise discretion to deny Appellant's Motion to

21 Compel Arbitration, it must, as a matter of law, find that granting the Motion to

22 Compel Arbitration would "inherently conflict" with the Bankruptcy Code or that

23 arbitration of the claim would "necessarily jeopardize" the objectives of the

24 Bankruptcy Code. In addition, the conflict must be "severe." *MBNA America Bank*

25 *v. Hill, supra,* 423 F.3d at 108. The burden to make that showing is on the

26 Appellee. *The Whiting-Turner Contracting Company v. Electric Machinery*

27 *Enterprises, Inc. (In re Electric Machinery Enterprises),* 479 F.3d 791, 799 (11th

28 Cir. 2007):

1     Furthermore, even if we were to find that EME's claim
2     against Whiting-Turner constitutes a core proceeding, we
3     find that EME did not sustain its burden under *McMahon*
4     to demonstrate that Congress intended to limit or prohibit
5     waiver of a judicial forum for the type of claim that EME
6     brought against Whiting-Turner. *See McMahon,* 482 U.S.
7     at 227, 107 S.Ct. at 2338.  The bankruptcy court found that
8     the determination of the *res* in a constructive trust was a
9     core proceeding and that arbitration under these
10    circumstances was inappropriate.  However, the
11    bankruptcy court did not assess whether enforcing the
12    parties' arbitration agreement  would inherently conflict
13    with the underlying purposes of the Bankruptcy Code.
14    **Only if the bankruptcy court actually makes a**
15    **sufficient finding that enforcing an arbitration**
16    **agreement would inherently conflict with the**
17    **Bankruptcy Code does it have the discretion to deny**
18    **enforcement of the arbitration agreement.** *See In re*
19    *National Gypsum,* 118 F.3d at 1067.  We find no evidence
20    in the record to suggest that sending EME's claim against
21    Whiting-Turner to arbitration, as the parties agreed to do,
22    would inherently conflict with the Bankruptcy Code, and
23    EME has failed to demonstrate otherwise.  Therefore, even
24    if this dispute is in fact core, it is still subject to arbitration.
25    (Emphasis added in bold.)
26         In this case the Appellee did not sustain his burden to make that showing and
27    the bankruptcy court made no such finding.  Such finding must be made if the
28    bankruptcy court is to deny Appellants' right to arbitration. *The Whiting-Turner*

1  *Contracting Company v. Electric Machinery Enterprises, Inc. (In re Electric*

2  *Machinery Enterprises), supra,* 479 F.3d at 799:

3       Though Appellants requested findings with respect to their Motion to Compel

4  Arbitration, the bankruptcy court stated that the Reporter's Transcript ("RT") of the

5  hearing on May 25, 2010 was sufficient.  As stated by the bankruptcy court:

6           MR. SHINBROT: Yes, your Honor.

7           Mr. Greenberg, you were going to ask for findings of

8         fact but we have - - can I just say "as noted" - -

9           THE COURT:    No, I made them on the record.

10           MR. SHINBROT: - - "on the record"?

11           All right.  I'll say "as noted on the record" in the order.

12           THE COURT:    Right.  And that's certainly - - even

13         in adversary proceedings, that's appropriate.  So that's why

14         I stated exactly what I was - - my reasoning.

15  Appendix No. 9, RT 26:17-27:1.

16       As a result, Appellants are left with no finding as to why Appellants' right to

17  arbitration would "inherently conflict" with or "necessarily jeopardize" the

18  objectives of the Bankruptcy Code.  Our review of the Reporter's Transcript has led

19  us to conclude that the sole basis for the bankruptcy court's denial of Appellants'

20  Motion to Compel Arbitration has nothing to do with the Bankruptcy Code; but

21  rather, is based upon Judge Russell's view of collateral estoppel or issue preclusion

22  with respect to an arbitrator's findings.  As shown below, that is not a relevant basis

23  for denying Appellants' Motion to Compel Arbitration.

24      **C.**    **CONCERN ABOUT POSSIBLE COLLATERAL ESTOPPEL OR ISSUE**

25            **PRECLUSION IN THE CONTEXT OF THIS CASE IS NOT A RELEVANT**

26            **BASIS TO DENY THE MOTION TO COMPEL ARBITRATION**

27       The bankruptcy court's decision to deny Appellants' Motion to Compel

28  Arbitration as shown above, was not based upon any finding of "inherent conflict"

1    between the FAA and the Bankruptcy Code, or that arbitration of the liability and
2    damage claims would "necessarily jeopardize" the objectives of the Bankruptcy
3    Code. Rather, it was based upon Judge Russell's view of collateral estoppel or issue
4    preclusion as to an arbitrator's findings. As stated in the Reporter's Transcript:

5           MR. GREENBERG:       We are not asking the
6    arbitrator to decide dischargeability. We have never asked
7    that.

8           THE COURT:       Oh, I know you say that. But I
9    respectfully disagree.

10          MR. GREENBERG:       Okay.

11          THE COURT:       That's really what you're asking.
12    What you are asking is for that arbitrator to decide things
13    which then would be collateral estoppel. Of course, that's
14    what you're doing - -

15          MR. GREENBERG:       Well - -

16          THE COURT:       - - because there's no other reason -
17    - let's not kid each other. Of course, that's what you're
18    doing.

19          MR. GREENBERG:       Okay.

20          THE COURT:       So if in fact they make the required
21    findings, then for all practical purposes, the arbitrator is
22    deciding it, even though technically not.

23          MR. GREENBERG:       All right. So then there are
24    two points I want to make.

25          Number one, there's case law that clearly holds that
26    arbitrators will arbitrate the underlying claim and only if -
27    - if the findings and so forth compel that conclusion, but
28    this Court still rules upon whether or not what happened in

1    the arbitration must be adopted here.  That's your decision.

2        THE COURT:    Well, I - - oh, no, no.  I think we

3    understand each other.  I just disagree with your

4    conclusion.

5  Appendix No. 9, RT 11:14-12:15.

6        MR. GREENBERG:    So the bottom line, as I

7    understand it is, the Court does not want to be in a position

8    to perhaps have to adopt an arbitrator's findings on a

9    collateral estoppel or issue preclusion.

10        THE COURT:    No, I - - well, the answer is, I think

11    that the dischargeability in the bankruptcy is a very

12    important right.  Obviously, there are other sides, the side

13    you're on, that are important too.  But in this particular

14    case, I'm going to be the one who is going to decide it and

15    there's no reason that I can see, since there's not a claim

16    litigation, that I shouldn't decide it.

17    I understand.  It's a good argument.  If I were in your

18    shoes, I would be making the same argument.  There's

19    nothing wrong with the argument.  But on balance, I think

20    the bankruptcy law contemplates that the bankruptcy judge

21    should decide it.

22    Now, of course, obviously, if this had been tried before

23    bankruptcy, then we would be dealing - -  but we're not - -

24    we would be dealing with collateral estoppel.  So I - - yes.

25  *Id.* RT 15:19-16:13.[6]

26

27  [6]  Given the Bankruptcy Court's above comments on Appellant's argument, as well as the law cited herein, Appellants do not believe that their argument is

28  (footnote continued)

1    This is not the first time Judge Russell has addressed the issue of the role of
2  arbitration in the context of a dischargeability issue. In *In re Barigian*, 72 B.R. 407
3  (Bankr.C.D.Cal. 1987) he considered whether collateral estoppel applied to an
4  arbitration award in which the Appellee had not participated and which had been
5  reduced to judgment prior to the Appellee filing a Chapter 7 case. Judge Russell
6  held that "… collateral estoppel is inapplicable because the arbitrator's findings were
7  based upon evidence, the admissibility of which was not based upon the rules of
8  evidence." *Id.* at 410.

9    However, since Judge Russell's opinion in 1987, the law has evolved to the
10  point where collateral estoppel is not a valid reason to deny arbitration. For
11  example, in *In re Clayton*, 168 B.R. 700 (Bankr.N.D.Cal. 1994), the court stated:

12         However, it has been disputed whether arbitration awards
13         should similarly be given full faith and credit in terms of
14         bankruptcy discharge hearings. *Compare Sixteen Twenty*
15         *Eight Bellevue Limited Partnership et al. v. Barigian (In*
16         *re Barigian)*, 72 B.R. 407 (Bankr.C.D.Cal. 1987)
17         (*"Barigian"*) *with Swanson et al. v. Tam (In re Tam)*, 136
18         B.R. 281 (Bankr.D.Kan. 1992). The Honorable Barry
19         Russell, United States Bankruptcy Judge in the Central
20         District of California and a respected commentator on
21         evidentiary issues, has opposed this usage, both on the
22         ground that arbitrators do not employ the Federal Rules
23         of Evidence and thus cannot adjudicate the same issues in
24         precisely the same manner as they would be argued in
25         Federal Court, *Barigian*, 72 B.R. at 410, as well as his

26

27  "disingenuous" as intimated by this Court in its August 5, 2010 decision.

28

1    generally restrictive view of the use of collateral estoppel

2    to prevent new argument. *See* Russell, *Bankruptcy*

3    *Evidence Manual,* §§ 4-7 at 33-55 (1993).

4  *Id.* at 704-705.

5    The Court finds that collateral estoppel can, as a matter

6    of law, be used to preclude relitigation of factual issues

7    previously decided in an arbitration. This is done on two

8    grounds. First, federal courts must frame preclusion

9    rules in light of the interest to be protected. *Dean Witter*

10    *Reynolds, Inc. v. Byrd,* 470 U.S. 213, 223-25, 105 S.Ct.

11    1238, 1244, 84 L.Ed.2d 158 (1985). The Court takes

12    note of both the strong national policy interest in favor of

13    alternative dispute resolution, *see Southland Corp. v.*

14    *Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984);

15    *Moses H. Cone Hospital v. Mercury Construction,* 460

16    U.S. 1, 23-25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765

17    (1983), and the Supreme Court's admonition in *Grogan,*

18    498 U.S. at 285 n. 11, 111 S.Ct. at 658 n. 11, that

19    collateral estoppel should be employed in

20    nondischargeability hearings to prevent unnecessary

21    relitigation of issues. With these interests in mind, the

22    difference between an official arbitrator, acting under

23    federal procedural and state substantive law, and a judge

24    is not relevant in this context.

25

26    With respect to Judge Russell's objection as to the

27    necessary procedural rules for the use of collateral

28    estoppel, *i.e.,* application of the F.R.E., as far as this

1    Court is aware, no other bankruptcy court has cited

2    *Barigian* for precedent in this context.  The Court notes

3    that rigorous application of Judge Russell's proposed test

4    would lead to the disqualification of many state court

5    judgments from receiving full faith and credit in federal

6    courts, a result arguably not compatible with *Migra* or

7    the Full Faith and Credit Act.  *But see, e.g., Maidman v.*

8    *O'Brien,* 473 F.Supp. 25 (S.D.N.Y. 1982) (findings from

9    arbitration on federal securities law binding as collateral

10   estoppel when procedures are formal and legalistic);

11   *Restatement (Second) of Judgments* § 84 (Comment (c))

12   (1982).

13   Second, the arbitration award in the case before the Court

14   was confirmed by a Federal District Court.  Judgments of

15   courts approving arbitration awards should be as final as

16   any other judgments.  *Norman Kern & Company v.*

17   *McNabola (In re McNabola),* 43 B.R. 362, 364

18   (Bankr.N.D.Ill. 1984).  *Cf. Birge-Forbes Co. v. Heye,*

19   251 U.S. 317, 40 S.Ct. 160, 64 L.Ed. 286 (1920).  This

20   Court will approach the arbitration award as if it had

21   been rendered directly by the Federal District Court for

22   the Northern District of Georgia.

23   *Id.* at 705.

24   In *In re Zangara,* 217 B.R. 26, 32 (Bankr.E.D.N.Y. 1998) the court stated:

25   The Debtor contends that since different evidentiary

26   standards were applied by the arbitrators than would be

27   applied by a federal court, the Award cannot be given

28   preclusive effect in this dischargeability action.  Zangara

cites one case, *In re Barigian,* 72 B.R. 407 (Bankr.C.D.Cal. 1987), for the proposition that, because arbitration panels are not bound by the Federal Rules of Evidence, the Award granted to O'Brien may not be given preclusive effect in this dischargeability action. However, *Barigian* was decided before the Supreme Court's decision in *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), which held that collateral estoppel applied in nondischargeability proceedings and liberalized the standard of proof required from clear and convincing evidence to a preponderance of the evidence. In *Grogan,* the Supreme Court encouraged the use of collateral estoppel to prevent relitigation of issues and reiterated its position that the Bankruptcy Code's "fresh start" policy is limited to "honest but unfortunate" debtors. *Id.* 498 U.S. at 287, 111 S.Ct. at 659. To the extent that *Barigian* stands for the proposition that because arbitration panels are not bound by the Federal Rules of Evidence, awards will not be given collateral estoppel effect, it has not been followed by other bankruptcy courts. In fact, it has been criticized for setting forth a theory which, if followed, would effectively prohibit the application of collateral estoppel for virtually *any* arbitration awards and even many state court judgments. *In re Clayton,* 168 B.R. 700, 705 (Bankr.N.D.Cal. 1994); *In re Selmonosky,* 204 B.R. 820, 826-27 (Bankr.N.D.Ga. 1996). (Emphasis the Court's)

1    *See also In re Rhodes,* 2008 WL 4876765, *2 (Bank.W.D.M. 2008) wherein

2    the court, in applying collateral estoppel to an arbitration award where the debtor

3    failed to appear at the arbitration, referring to *In re Barigian, supra,* stated:

4              The federal interest at stake here - - the discharge of a

5              debtor's debts and the resulting fresh start - - is

6              significant, but it does not rise to the level of interest

7              requiring protection from the principles of collateral

8              estoppel.  The Supreme Court has ruled that collateral

9              estoppel may be applied to establish the factual basis for

10             nondischargeability actions commenced under § 523(a),

11             and all but one court (with which this Court respectfully

12             disagrees) considering this issue have found that this

13             principle is no less applicable with regard to arbitration

14             awards.  Accordingly, the Court will accord collateral

15             estoppel effect to the Award made by the Arbiter and will

16             apply the standard test to determine the collateral

17             estoppel effect of the Award.

18           It is now well established in the Ninth Circuit that arbitration awards are

19    entitled to issue preclusion in a nondischargeability proceeding.  As stated in

20    *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 832 (9th Cir. BAP 2006):

21             Imposition of issue preclusion as between the parties to the

22             confirmed arbitration award was permissible under

23             applicable California law. The bankruptcy court did not

24             abuse its discretion when it entered summary judgment

25             without relitigating the issue of willful and malicious

26             injury.

27           See also *Vans Inc. v. Rosendahl (In re Rosendahl)*, 307 B.R. 199, 218 (D.

28    Ore. 2004):

1        "My conclusion is that the public policies underlying issue

2        preclusion would be advanced by applying issue

3        preclusion to Vans' §§ 523(a)(4) and (a)(6) causes of

4        action in this adversary proceeding."

5    Given the post *In Re: Barigian, supra*, law with respect to arbitration,

6 collateral estoppel and issue preclusion, especially the United States Supreme Court

7 decision in *Grogan v. Garner*, 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 658 n. 11

8 (1991), collateral estoppel and issue preclusion cannot be used to deny arbitration.

9    What the evolution of the law since *In re Barigian, supra* shows is that a

10 concern over potential collateral estoppel and issue preclusion resulting from an

11 arbitration does not "inherently conflict" with the Bankruptcy Code and arbitration

12 of Appellants' non core liability and damage claims does not "necessarily

13 jeopardize" the objectives of the Bankruptcy Code.  To adopt Judge Russell's

14 position would result in the right to arbitration being dependent upon a bankruptcy

15 court judge's view of collateral estoppel or issue preclusion.  Consistency in

16 applicable law concerning the right to arbitration would fall by the wayside.

17    **D.    RESOLUTION OF APPELLANTS' NON-CORE CLAIMS WILL BE FAR**

18    **MORE EXPEDITIOUS AND LESS COSTLY IN ARBITRATION AS**

19    **OPPOSED TO THE BANKRUPTCY COURT**

20    Appellants submit that resolution of the non-core claims in arbitration is more

21 expeditious and less costly than resolution in the bankruptcy court.  Judicial

22 efficiency and cost are better served by compelling arbitration and staying the

23 adversary proceeding before taking up the issue of dischargeability.  Rather than the

24 bankruptcy court having a trial to determine liability and damages, that

25 determination can occur in arbitration.  If Appellants lose in arbitration, there will be

26 no need to expend any further time in the bankruptcy court on this matter.  If

27 Appellants prevail, all the bankruptcy court will be required to do is to first review

28 the arbitrator's findings of fact and conclusions of law, as well as the record, to

LAW OFFICES
BERKES CRANE
ROBINSON & SEAL LLP

18

determine the issue of dischargeability. If the arbitrator's findings do not support a finding of non dischargeability, the bankruptcy court will then set a time for a trial on the dischargeability issue wherein Appellants would have the opportunity to supplement the arbitrator's findings. *Vans Inc. v. Rosendahl (In re Rosendahl), supra* 307 B.R. at 217:

> In light of the Arbitrator's general findings in the Final
> Award that Rosendahl committed intentional fraud, I find
> that Vans should have the opportunity at trial to
> supplement the Arbitrator's findings to establish that
> Vans' claim against Rosendahl satisfies all of the
> elements for an exception from discharge under §
> 523(a)(2)(A).

There is nothing in the Bankruptcy Code which precludes an arbitrator or a state court from first deciding state law liability and damage issues which bear upon the bankruptcy dischargeability issue. To the contrary, it simplifies the process. As stated in *Tudor Oaks Limited Partnership v. Cochrane (In re Cochrane),* 179 B.R. 628, 632 (Bankr. D.Minn. 1995):

> The issue presented on this motion is actually quite simple:
> do the facts as found by the state courts demonstrate a
> "defalcation while acting within a fiduciary capacity"
> within the meaning of § 523(a)(4)? If they do, the Plaintiff
> wins.

In addition, there are substantive differences between non-core claims being decided in arbitration as opposed to a bankruptcy court. In arbitration the arbitrator can allocate whatever time is needed to hear the matter without the risk of other matters taking the arbitrator's time, or the bankruptcy court having to shorten the time because of its calendar. Appellants have estimated that the trial of their non-core claims to determine liability and damages will take two to three weeks. The

bankruptcy court and Appellee estimate two days.  Somewhere in between is probably correct.

There is also the fact that Appellants and their witnesses reside on the East Coast.  They will all have to travel to Los Angeles for a trial in the bankruptcy court.  With an arbitration in New York, to which Appellees agreed, only Appellee will have to travel to New York.

In addition, discovery rights are more limited in arbitration.  Another benefit is that an arbitrator with New York law knowledge and experience can be selected.  The liability and damage non-core claims are governed by New York law.

Judicial review of arbitration awards is limited because the benefits of arbitration are derived, in part, from the finality of the arbitrator's decision.  The grounds for judicial review of arbitration awards are very narrow 9 U.S.C. §§ 1-16. .  This limited review enables parties to avoid the delays and costs of protracted appellate procedures, so common to litigation.  A court is permitted to change or vacate an arbitration award only on certain limited grounds.

On the other hand, for a non-core matter that is within the scope of jurisdiction of a bankruptcy court because it is related to a core matter such as a nondischargeability complaint, a bankruptcy court judge may only hear the proceeding as opposed to being able to finally determine it.  28 U.S.C. § 157(c)(1).  Rather, the bankruptcy court judge must submit proposed findings of fact and conclusions of law to the district court.  Only the district court can enter a final judgment after considering the bankruptcy court's proposal and after reviewing de novo those matters to which any party has  timely and specially objected.  Fed.R.Bank.P. 9033.  In addition, full judicial appellate rights exist.

## CONCLUSION

In the final analysis, the issue is whether a bankruptcy court errs when it concludes that it has the right or discretion to try the issue of dischargeability, which of necessity includes liability, before an arbitrator decided the issue of liability.  In a

1  no-asset case where the debtor has been discharged, and where an arbitrator's
2  decision will have no impact upon creditors, the bankruptcy estate, or anyone else
3  except for the parties to the dischargeability case, and since concern about collateral
4  estoppel is not a legitimate reason to deny arbitration, and since arbitration does not
5  necessarily jeopardize the objectives of the Bankruptcy Code, and given the strong
6  federal policy favoring arbitration, arbitration in this matter does not inherently
7  conflict with the Bankruptcy Code.

8       For the foregoing reasons, Appellants respectfully request that the Order of
9  the bankruptcy court denying Appellants Motion to Compel Arbitration be reversed
10 and that the Motion to Compel Arbitration be granted.

11

12 DATED: August 10, 2010    RONALD M. GREENBERG,
    A PROFESSIONAL CORPORATION
13

14     BERKES CRANE ROBINSON & SEAL LLP

15     - and -

16     THE SHAPIRO LAW FIRM

17

18     By: _____
19     RONALD M. GREENBERG
20     Attorneys for Appellants
    MICHAEL ACKERMAN AND
21     FLOYD KURILOFF

22

23 74340.1

24

25

26

27

28

1

## PROOF OF SERVICE

2 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3    At the time of service, I was over 18 years of age and **not a party to this
action.** I am employed in the County of Los Angeles, State of California. My
4 business address is 515 South Figueroa Street, Suite 1500, Los Angeles, California
90071.

5
     On August 10, 2010, I served true copies of the following document(s)
6 described as **APPELLANTS' OPENING BRIEF** on the interested parties in this
action as follows:

7
        Jeffrey S. Shinbrot, Esq.                    *Attorneys for Debtor/Appellee*
8       jeffrey@shinbrotfirm.com                     JOSE EBER
        JEFFREY S. SHINBROT, APLC
9       8200 Wilshire Boulevard, Suite 400
        Beverly Hills, CA  90211
10      Tel:  (310) 659-5444
        Fax:  (310) 878-8304

11  ☒    **BY MAIL:** I enclosed the document(s) in a sealed envelope or package
12       addressed to the persons at the addresses listed in the Service List and placed
         the envelope for collection and mailing, following our ordinary business
13       practices. I am readily familiar with Berkes Crane Robinson & Seal LLP's
         practice for collecting and processing correspondence for mailing. On the
14       same day that the correspondence is placed for collection and mailing, it is
         deposited in the ordinary course of business with the United States Postal
15       Service, in a sealed envelope with postage fully prepaid.

16      I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct and that I am employed in the office
17 of a member of the bar of this Court at whose direction the service was made.

18      Executed on August 10, 2010, at Los Angeles, California.

19

20                                          _____
                                            LYNN SPENCER
21

22

23

24

25

26

27

28

LAW OFFICES
BERKES CRANE
ROBINSON & SEAL LLP